**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DELORES ANN ROLLINS,

     Plaintiff,

         v.

UNITED STATES DEPARTMENT OF
STATE,

      Defendant.

Civil Action No.  13-1450 (JEB)

## MEMORANDUM OPINION

Michael Jordan Rollins died in Taiwan on September 17, 2009.  Seeking to learn more
about the circumstances of his death, his mother, Plaintiff Delores Ann Rollins, submitted a
Freedom of Information Act request to the United States Department of State.  After waiting
many months and receiving no response, Rollins filed this suit to compel the agency to produce
relevant records.  State thereafter produced over 150 records in full and several dozen more with
redactions.  It now moves for summary judgment on the ground that it has complied with its
obligations under FOIA.  Plaintiff cross-moves for summary judgment, challenging the agency's
response in two facets: she argues that its search for records was inadequate and that it
improperly withheld portions of certain documents.  Having now reviewed the six remaining
contested documents *in camera*, as well as the parties' briefings and declarations, the Court
concludes that both the search and the withholdings were appropriate.  It will, accordingly, grant
Defendant's Motion for Summary Judgment and deny Plaintiff's.

## I.  Background

On October 19, 2012, Plaintiff submitted a FOIA request to the United States Department

of State, seeking records related to the death of her son, Michael Jordan Rollins, who had died in Taiwan three years earlier.  See Compl., ¶ 14.  Although the State Department acknowledged receipt of the request on November 5, 2012, id., ¶ 15, more than ten months later it had yet to produce responsive records or take final action with respect to Rollins's request.  Id., ¶ 16.  As a result, she filed this suit on September 23, 2013.

Several months later, on January 10, February 7, and February 28, 2014, State produced responsive records to Plaintiff.  See Def. Mot., Att. 1 (Declaration of John F. Hackett), Exhs. 4-6 (Letters from Sheryl Walter, Office of Information Programs and Services, Department of State, to Delores Ann Rollins).  The final letter, dated February 28, stated that the Department had finished processing the request.  See Hackett Decl., Exh. 6.  In total, State located 195 responsive documents, 158 of which were produced in their entirety and 37 of which were produced with redactions.  See Def. Mot., Statement of Material Facts (SMF), ¶ 23.

Both parties now move for summary judgment.  While the adequacy of the Department's search remains contested, the parties have narrowed their dispute on withholdings to portions of only six responsive documents.  See Pl. Mot. and Opp. at 2.  To aid in its review, the Court ordered State to provide these for *in camera* review.  See September 18, 2014, Minute Order. The Court has now examined the redactions along with the Department's justifications.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

## III.    Analysis

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to

the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . .  shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds.  See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)).  "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ."  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

As noted previously, there are two issues this Court must decide: first, whether State conducted an adequate search for records, and second, whether it properly withheld portions of six of the responsive documents.  The Court will address each issue in turn.

A.  Adequacy of the Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C.

Cir. 1994).  The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  Id.

To establish the sufficiency of its search here, the State Department submitted two declarations from John F. Hackett, its Acting Director of the Office of Information Programs and Services and the official "immediately responsible" for responding to FOIA requests.  See Hackett Decl., ¶ 1; Def. Reply, Att. 1 (Second Declaration of John F. Hackett), ¶ 1.  The first declaration narrates, in considerable detail, the steps State took to locate responsive records.  For instance, the Department evaluated the request and determined that four "components" – the Central Foreign Policy Records, the Bureau of Diplomatic Security, the Office of Overseas Citizens Services, and the American Institute in Taiwan – were the only ones reasonably likely to possess responsive records.  See Hackett Decl., ¶ 11.  Hackett then describes how each of those offices maintains records and the search terms and methods that were used.

Plaintiff nevertheless challenges the adequacy of the search because it failed to turn up certain records referenced in the documents she did receive.  See Pl. Mot. and Opp. at 5-7.  Specifically, State turned over a postal receipt for a mailing, which indicated that the mailing included documents and a CD.  Id. at 5.  According to Plaintiff, these items were "important investigation records pertaining to the death of [her] son," but the agency has not produced them to her.  Id. at 6.  Plaintiff also points to a telefax-message cover sheet that "expressly indicates

that it was sent as the cover page for another one[-]page document related to Michael Jordan

Rollins," which Plaintiff has not received.  Id. at 7.  Rollins contends that these references to

other documents are "clear and obvious leads," and that the agency's failure to follow up on

them renders its search inadequate.  Id.; Pl. Reply at 2-4.

In general, however, identifying a handful of documents that an agency failed to uncover

does not, in itself, demonstrate that a search was inadequate.  See Boyd v. Criminal Div. of Dep't

of Justice, 475 F.3d 381, 391 (D.C. Cir. 2007) ("[T]he fact that a particular document was not

found does not demonstrate the inadequacy of a search."); Wilbur v. CIA, 355 F.3d 675, 678

(D.C. Cir. 2004) ("[T]he agency's failure to turn up a particular document . . . does not

undermine the determination that the agency conducted an adequate search for the requested

records.").  The existence of particular undisclosed documents is not conclusive because any

individual document may have been lost, destroyed, or not retained in the first place.  See

Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003).  Hence, the

"adequacy of a FOIA search is generally determined not by the fruits of the search, but by the

appropriateness of the methods used to carry out the search."  Id.; see also Porter v. CIA, 778 F.

Supp. 2d 60, 69 (D.D.C. 2011).

An agency's non-production of certain documents will raise questions about its search

only where documents that are produced or information of which the agency is aware provide

clear leads to locating the missing documents.  Such leads may indicate, for example, other

offices that should have been searched, additional search terms that should have been used, or

records custodians who should have been consulted.  The cases Plaintiff cites involve precisely

these sorts of situations.  For instance, in Campbell v. Department of Justice, 164 F.3d 20 (D.C.

Cir. 1998), the files the plaintiff received alluded to records in two systems the FBI had not

searched. The D.C. Circuit held that, on the basis of this information, the Bureau should have searched those additional record systems. Id. at 28. In Valencia-Lucena, that court held that the Coast Guard's search for a vessel's logbook was inadequate, in part, because it had not interviewed the vessel's captain about the logbook's whereabouts. 180 F.3d at 327-28. The court explained that the captain, who had used the logbook to testify at the plaintiff's criminal trial, was a "likely source of information about what happened to th[e] logbook," and that "[t]he undisputed connection between the missing logbook and [the captain] should have led the Coast Guard to inquire of him as a source 'likely to turn up the information requested.'" Id. at 327-28 (quoting Oglesby v. Dep't of Army, 920 F.3d 57, 68 (D.C. Cir. 1990)). A California district court, similarly, held in National Resource Defense Council v. Department of Defense, 388 F. Supp. 2d 1086 (C.D. Cal. 2005), that the Defense Department's search for records was inadequate because it had failed to search for records in an office that it knew – based on non-public information – was the central office for activities related to the subject matter of the request. The agency therefore had a clear and obvious lead to another office that should have been searched.

Perhaps the most helpful case for Plaintiff's position is Center for National Security Studies v. Department of Justice, 215 F. Supp. 2d 94 (D.D.C. 2002), aff'd in part, rev'd in part on other grounds, 331 F.3d 918 (D.C. Cir. 2003). The plaintiffs there sought information related to the arrest of individuals after September 11th. Id. at 97. In denying the defendant's motion for summary judgment on the adequacy of its search, the court noted that one of the two documents the plaintiffs received "clearly indicate[d] the existence of earlier relevant documents," and that the defendant "had an obligation, after discovery of this document, to search for additional responsive information" about the procedures referenced in the document. Id. at 110. It appears,

however, that the court's denial of summary judgment on this issue was largely driven by other reasons, including the low number of documents produced – two – in light of the scope of the request. The plaintiffs there sought information about a nationwide policy that had to have been communicated to "all United States Attorneys Offices, all FBI offices, all INS offices, and all DOJ offices throughout the United States." Id. at 110-11. The court opined that it was "simply not credible that no other documents [were] responsive to [p]laintiffs' request." Id. at 110.

These cases are all clearly distinguishable on their facts. To begin with, a fair number of documents (195) has been turned over to Rollins. Her only concern is that she did not receive a handful of records referenced in those produced. Yet she does not suggest that the disclosed documents provide any leads to other offices, databases, or files that should have been searched, or even to additional search terms or methods the agency should have used. There is also no evidence that State has non-public information that should have prompted it to search in additional locations, use additional search terms, or interview particular officials. Finally, Rollins offers no evidence that the referenced documents still exist, and her suggestion to the contrary is purely speculative.

The much closer parallel is thus this Circuit's decision in Iturralde. 315 F.3d 311. The court acknowledged there that "[i]n certain circumstances, a court may place significant weight on the fact that a records search failed to turn up a particular document in analyzing the adequacy of a records search." 315 F.3d at 315. It nonetheless rejected the plaintiff's argument that the failure to produce a specific report demonstrated the inadequacy of the agency's search. It explained that the plaintiff had "fail[ed] to offer evidence of circumstances sufficient to overcome an adequate agency affidavit." Id. The plaintiff did not allege, for instance, that the agency had neglected to search particular offices or files where the report may have been located.

Id. Nor did the plaintiff allege that the agency had not interviewed an official who might have been helpful in locating the missing report. Id. There were, simply stated, no clear paths to the location of the document sought. Such conclusion applies equally here.

In light of the search that State conducted, which was reasonably calculated to locate all responsive records, the Court concludes that it fulfilled its obligation under FOIA. Summary judgment on this issue is thus warranted.

B. The State Department's Withholdings

Agencies must provide responsive records unless they fall into one of nine categories of exempt information. See 5 U.S.C. § 552(b)(1)-(9). If the government withholds records, it bears the burden of demonstrating that at least one exemption applies. Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

The issue here is whether State properly withheld portions of six contested documents under FOIA Exemptions 5 and 6 and whether it could have segregated additional non-exempt material for production. The Court will begin by evaluating the information withheld under the exemptions and will then address the segregability question.

1. Exemption 5

FOIA Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, Exemption 5 permits an agency to withhold "those documents, and only those documents, normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 798-99 (1984). The exemption encompasses three distinct components: the attorney-work-product privilege, the deliberative-process privilege, and the

attorney-client privilege.  Am. Immigration Council v. Dep't of Homeland Sec., 905 F. Supp. 2d

206, 216 (D.D.C. 2012).  In the present case, State asserts that portions of five of the contested

documents should be withheld under this exemption because they are covered by the

deliberative-process and attorney-client privileges.

The first of those privileges – deliberative-process – permits the "withholding of all

papers which reflect the agency's group thinking in the process of working out its policy and

determining what its law shall be."  Sears, Roebuck, 421 U.S. at 153 (internal quotations

omitted).  To justify a withholding under this privilege, the government must prove two basic

elements.  First, it must demonstrate that a document qualifies as "pre-decisional" in the sense

that it was "[a]ntecedent to the adoption of an agency policy."  Jordan v. Dep't of Justice, 591

F.2d 753, 774 (D.C. Cir. 1978) (en banc), partially overruled on other grounds by Crooker v.

Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1053 (D.C. Cir. 1981).  Second, the

government must show that the document forms "a direct part of the deliberative process in that

it makes recommendations or expresses opinions on legal or policy matters."  Vaughn, 523 F.2d

at 1144; see also Pub. Citizen, Inc. v. Office of Mgmt. and Budget, 598 F.3d 865, 876 (D.C. Cir.

2009) (explaining that "[a] document that does nothing more than explain an existing policy

cannot be considered deliberative").

The second privilege – attorney-client – extends to confidential communications from

clients to their attorneys, as well as communications from attorneys to their clients containing

confidential information supplied by the client.  See Tax Analysts v. IRS, 117 F.3d 607, 618

(D.C. Cir. 1997).  "In the governmental context, the 'client' may be the agency and the attorney

may be an agency lawyer."  Id. at 618.  Where an agency lawyer serves in a mixed capacity that

involves responsibilities both within and "outside the lawyer's sphere," the agency employee's

communications will only be protected to the extent that they involve his or her professional, legal capacity.  In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984).

On the basis of State's declarations and its own *in camera* review of the disputed documents, the Court concludes that the agency properly withheld the redacted portions under Exemption 5.  All of the redacted e-mail exchanges clearly fall into one of two categories: 1) e-mails among agency personnel deliberating about the agency's authority to undertake certain actions and discussing what next steps to take in regard to Michael Jordan Rollins's death, and 2) e-mails among agency attorneys and staff made for the purpose of securing or providing legal advice about the agency's authority.  See Hackett Decl., ¶¶ 38-47; Second Hackett Decl., ¶¶ 9-13.  The e-mails in the former category are plainly pre-decisional and deliberative.  As to those in the latter category, the content clearly falls within the scope of the attorney-client privilege. The Department has also stated that those communications "were intended to be confidential, and that confidentiality has been maintained."  Hackett Decl., ¶¶ 39, 41, 43, 45, 47.  Such statements are accorded a presumption of good faith, see Larson, 565 F.3d at 862, and Plaintiff has not pointed to any contrary evidence to undermine these assertions.  See Pl. Reply at 9.  As all of the disputed e-mails are protected by either the deliberative-process or attorney-client privilege, they are properly withheld under Exemption 5.

### 2.  *Exemption 6*

The only contested information withheld under Exemption 6 is the name of a third party on a cover memo that transmitted the reports of two deaths abroad – that of Michael Jordan Rollins and that of the third party.  In its declaration, the Department states that the information is properly withheld both because it is not responsive to Plaintiff's request and because it meets the requirements of Exemption 6.  See Hackett Decl., ¶¶ 36-37; Second Hackett Decl., ¶¶ 15-16.

The Court agrees on both fronts. First, State attested in its declaration that the two deaths were unrelated, see Hackett Decl., ¶ 37; Second Hackett Decl., ¶ 16, and Plaintiff does not provide any evidence to rebut this statement. See Larson, 565 F.3d at 862. The disclosure of the information, therefore, is not encompassed by Plaintiff's request, which sought only "records that discuss or describe the circumstances of the death or the cause of death of Michael Jordan Rollins . . . ." SMF, ¶ 1.

Even if that were not the case, the information is also properly withheld under Exemption 6. This exemption protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To withhold information under the exemption, three criteria must be satisfied. First, the information must be contained within "personnel and medical files and similar files." Second, the disclosure of information must "constitute a clearly unwarranted invasion of personal privacy." Finally, if the first two requirements are met, the privacy interest must outweigh the public interest in disclosure. See 5 U.S.C. § 552(b)(6); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 582 (D.C. Cir. 1996).

The information withheld in this case clearly satisfies the "similar files" requirement. In Department of State v. Washington Post Co., 456 U.S. 595 (1982), the Supreme Court held that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. Id. at 599-603. The Court stated that the protection of an individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information." Id. at 601 (citing H.R. Rep. No. 89-1497 at 11 (1966)); see Judicial Watch, Inc. v. FDA, 449 F.3d 141, 152 (D.C. Cir. 2006). Rather, the Court made clear that all information that "applies to a particular

individual" meets the threshold requirement for Exemption 6 protection.  Wash. Post, 456 U.S. at 602.

Disclosing the third party's name here would also "constitute a clearly unwarranted invasion of personal privacy."  For information to be withheld under Exemption 6, the disclosure of information must compromise a substantial, as opposed to a *de minimis*, privacy interest.  See, e.g., Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1229-30 (D.C. Cir. 2008).   In this Circuit, "[t]he threat to privacy . . . need not be patent or obvious to be relevant."  Pub. Citizen Health Research Grp. v. Dep't of Labor, 591 F.2d 808, 809 (D.C. Cir. 1978).  The threat to privacy, though, must be real rather than speculative.  See Rose, 425 U.S. at 380 n.19 ("The legislative history is clear that Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities."); Carter v. Dep't of Commerce, 830 F.2d 388, 391 (D.C. Cir. 1987) (stating that "[w]ithholding information to prevent speculative harm" is contrary to FOIA's pro-disclosure policy).  Here, the Court agrees with State that the threat to privacy is more than *de minimis* and is real, rather than speculative.  In doing so, the Court recognizes that privacy interests may be diminished where information relates to a deceased individual.  See, e.g., Campbell, 164 F.3d at 33.  The Department is nonetheless correct that release of the information could result in unwanted attention for or harassment of the individual's surviving family members.  See Second Hackett Decl., ¶ 16.  The Court, consequently, must balance this threat to privacy against the public interest in the third party's name.

That balance here ultimately tips in favor of privacy.  The only valid public interest in the FOIA context is one that serves FOIA's core purpose of shedding light on an agency's performance of its statutory duties.  See Reporters Comm., 489 U.S. at 773.  "'Information about private citizens . . . that reveals little or nothing about an agency's own conduct' does not serve a

relevant public interest under FOIA." <u>Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health and Human Servs.</u>, 554 F.3d 1046, 1051 (D.C. Cir. 2009) (quoting <u>Reporters Comm.</u>, 489 U.S. at 773).  Plaintiff here argues that there is a public interest in the name because it would allow the public to "review the agency's response to this incident . . . 'to determine if there is a need for any policy or legislative changes to ensure the State Department initiates appropriate oversight, and to require some type of investigation actions by United States law enforcement agencies for incidents involving the unnatural death of an American citizen overseas."  Pl. Reply at 12-13 (quoting Pl. Mot. and Opp., Att. 1 (Declaration of Delores Ann Rollins), ¶ 3).  The third party's name, however, is just a name.  Plaintiff offers no evidence or argument that this individual died in mysterious circumstances or that disclosure of his or her identity would shed any light on the Department's performance of its statutory duties.  There is, therefore, no public interest in disclosure, and the privacy interests are sufficient to justify withholding.

### 3.  *Segregability*

The last issue that the Court must address is segregability.  FOIA requires that "[a]ny reasonably segregable portion of a record . . . be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  <u>Mead Data Central, Inc., v. Dep't of Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977). The Court's *in camera* review has demonstrated that there are no meaningful redacted portions of the records that were segregable and should have been produced.  The only non-exempt information was a quote from an e-mail Plaintiff has already received.  As a result, the Court

finds that State has also complied with its obligation to segregate and produce non-exempt material where possible.

## IV.      Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and will deny Plaintiff's Motion.  A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 8, 2014